UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CHRISTOPHER CARR                                    CIVIL ACTION

VERSUS                                              NO. 18-4093

YELLOWFIN MARINE SERVICES,                          SECTION M (1)
LLC

**ORDER & REASONS**

Before the Court is a motion for summary judgment submitted by third-party defendant Gulf Crane Services, Inc. ("Gulf Crane"),[1] to which third-party plaintiff Yellowfin Marine Services, LLC ("Yellowfin") responds in opposition,[2] and in support of which Gulf Crane replies.[3]  Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons.

**I.    BACKGROUND**

This case arises out of injuries allegedly sustained by plaintiff Christopher Carr while working as a crane technician helper for Gulf Crane, and as a passenger aboard the *M/V K Marine VIII*, a vessel owned and operated by Yellowfin.[4]  Carr alleges that he was injured on March 1, 2016, while attempting to transfer by way of a personnel basket from the deck of the *K Marine VIII* to South Pass 62 field ("SP 62"), a fixed platform operated by Fieldwood Energy, LLC ("Fieldwood") in the Gulf of Mexico.[5]  Under the Master Services Contract between Gulf Crane and Fieldwood ("Gulf Crane MSC"), Gulf Crane service technicians provide inspections and/or repairs to cranes permanently installed on fixed platforms operated by Fieldwood in the

---

[1] R. Doc. 26.
[2] R. Doc. 33.
[3] R. Doc. 38.
[4] R. Docs. 1 at 1-2; 26-5 at 1.
[5] R. Docs. 1 at 1-2; 26-2 at 1.

Gulf of Mexico.[6] At the time of the incident, Carr and his supervisor Shannon Williams were assigned to service cranes on SP 62 and other Fieldwood platforms.[7] Yellowfin was operating under a contract with Kilgore Marine Services, LLC ("Kilgore"), through which Yellowfin provides maritime transport services on its vessels for Fieldwood.[8] Under the Master Time Charter Agreement between Kilgore and Fieldwood ("Kilgore MTCA"), Kilgore is responsible for supplying Fieldwood with transport vessels for its operations.[9]

Carr alleges that his injuries were caused by the negligence of Yellowfin,[10] which Yellowfin denies.[11] Yellowfin asserts that under the Gulf Crane MSC, Gulf Crane is contractually obligated to defend, indemnify, and name Yellowfin as an additional insured on its insurance policies in this matter due to the application of cross-indemnities between the two companies under the Gulf Crane MSC and the Kilgore MTCA.[12]

## II.   PENDING MOTION

Gulf Crane argues that Yellowfin's third-party demand for indemnification falls under the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. § 1331, *et seq.*, that because the Gulf Crane MSC is a nonmaritime contract, Louisiana law applies through OCSLA,[13] and that

---

[6] R. Doc. 26-5 at 1.
[7] *Id.* at 1.
[8] R. Doc. 26-3 at 2.
[9] *Id.* at 2-3.
[10] R. Doc. 1 at 2.
[11] R. Doc. 5 at 2.
[12] R. Docs. 13 at 4-5; 26-3 at 5-6. Yellowfin also asserted its third-party complaint against Wood Group PSN, Inc. ("Wood Group"), the operator of the crane on the *K Marine VIII* to which the personnel basket on which Carr was allegedly injured was attached, and tendered Wood Group as a direct defendant to the plaintiff through Federal Rule of Civil Procedure 14(c). R. Doc. 13 at 1-3. Carr's claims against Wood Group were dismissed with prejudice on October 10, 2019. R. Doc. 39. Yellowfin's third-party claims against Wood Group were dismissed without prejudice on October 29, 2019. R. Doc. 41.
[13] OCSLA contains a choice-of-law provision that provides, in pertinent part:

> (1) The Constitution and laws and civil and political jurisdiction of the United States are extended to the subsoil and seabed of the outer Continental Shelf and to all artificial islands, and all installations and other devices permanently or temporarily attached to the seabed, which may be erected thereon for the purpose of exploring for, developing, or producing resources therefrom, or any such installation or other device (other than a ship or vessel) for the purpose of transporting

therefore the Louisiana Oilfield Indemnity Act ("LOIA"), La. R.S. 9:2780, precludes enforcement of the cross-indemnification clauses.[14] According to Gulf Crane, the three-factor test from *Union Texas Petroleum Corp. v. PLT Engineering, Inc.*, 895 F.2d 1043, 1047 (5th Cir. 1990) (the "*PLT* test") used to determine the applicability of OCSLA[15] is satisfied as (1) the work Carr was engaged to perform for Fieldwood under the Gulf Crane MSA was to be done on a fixed offshore platform, which is an OCSLA situs; (2) Carr's work for Fieldwood under the Gulf Crane MSC was nonmaritime, and therefore federal maritime law does not apply of its own force; and (3) the LOIA does not conflict with federal law.[16] Furthermore, Gulf Crane argues that Yellowfin's claim to additional insured status has no basis in the language of the Gulf Crane MSC, and even if it did, it would also be nullified by the LOIA.[17]

In opposition, Yellowfin contests neither that element (1) or element (3) of the *PLT* test is satisfied, nor that its claim to additional insured status is indeed based in the contractual language of the Gulf Crane MSC.[18] Rather, Yellowfin argues that Gulf Crane has not established under the requisite showing for summary judgment that the Gulf Crane MSC is nonmaritime[19] and that

---

such resources, to the same extent as if the outer Continental Shelf were an area of exclusive Federal jurisdiction located within a State ... .

(2)(A) To the extent that they are applicable and not inconsistent with this subchapter or with other Federal laws and regulations of the Secretary now in effect or hereafter adopted, the civil and criminal laws of each adjacent State, now in effect or hereafter adopted, amended, or repealed are declared to be the law of the United States for that portion of the subsoil and seabed of the outer Continental Shelf, and artificial islands and fixed structures erected thereon, which would be within the area of the State if its boundaries were extended seaward to the outer margin of the outer Continental Shelf … .

43 U.S.C. § 1333(a).
[14] R. Doc. 26-3 at 8.
[15] Under the *PLT* test, for "adjacent state law to apply as surrogate federal law under OCSLA," three conditions must be met: "(1) The controversy must arise on a situs covered by OCSLA (i.e. the subsoil, seabed, or artificial structures permanently or temporarily attached thereto). (2) Federal maritime law must not apply of its own force. (3) The state law must not be inconsistent with Federal law." *Id. See infra* Section III.B.1.
[16] R. Doc. 26-3 at 9-14.
[17] *Id.* at 14-17.
[18] *See* R. Doc. 33.
[19] Yellowfin points out that in arguing that the Gulf Crane MSC is nonmaritime, Gulf Crane used the six-factor test in *Davis & Sons, Inc. v. Gulf Oil Corp.*, 919 F.2d 313, 316 (5th Cir. 1990), *see* R. Doc. 26-3 at 12-14,

3

the LOIA applies to the Gulf Crane MSC.[20] Yellowfin adds that the Court should enforce the Gulf Crane MSC indemnity provisions for public policy reasons, notwithstanding the LOIA, and that even if the Gulf Crane MSC is nonmaritime, the specific obligations between Yellowfin and Gulf Crane are governed by maritime law, making the indemnity provisions enforceable.[21]

In reply, Gulf Crane first asks the Court to dismiss the claim for additional insured status as unopposed.[22] Gulf Crane then reiterates that the work at issue under the Gulf Crane MSC is nonmaritime under the two-prong test in *Doiron*,[23] and that not only has it presented sufficient evidence to show that the LOIA applies to the matter, but that a separate test to determine the LOIA's applicability is not necessary under *Doiron*.[24]

---

though this test was overruled last year in *In re Larry Doiron*, 879 F.3d 568 (5th Cir. 2018). R. Doc. 33 at 3. In its reply memorandum, Gulf Crane admits and apologizes for its error. R. Doc. 38 at 1.

Yellowfin argues that having committed such an error, Gulf Crane is "precluded" from showing that the test in *Doiron* is satisfied in its reply memorandum, citing *Doe v. Beaumont Independent School District*, 173 F.3d 274, 299 n.13 (5th Cir. 1999). R. Doc. 33 at 10. Yellowfin misreads *Doe*. *Doe* stands for the proposition that an ***issue*** cannot be raised for the first time in a reply brief. *See Doe*, 173 F.3d at 299 n.13. Here, the issue raised in the original brief remains the same: whether the contract is maritime or nonmaritime. Gulf Crane simply applied an outdated ***test***; it is not "precluded" from correcting its error and arguing in its reply brief that the new test is satisfied. Accordingly, the Court will apply the current test to the issue raised in the original brief, as it would have whether or not Yellowfin had noted the error.

[20] *Id.* at 3-7.
[21] *Id.* at 7-10.
[22] R. Doc. 38 at 2. Gulf Crane argues that while under of section 13(f)(ii) of the Gulf Crane MSC, as the "Contractor," Gulf Crane "agree[d] that it will support its mutual indemnity obligations of this Section 13(f) with insurance … obtained for the benefit of such Third Party Contractor(s) (and any such Third Party Contractor Group)," section 13(f) does not mention additional named insured obligations and that the Gulf Crane MSC does not provide for any additional insured requirements beyond those imposed with respect to the "Company Group" (Fieldwood Group). R. Doc. 26-3 at 14-15. Therefore, it argues, the Gulf Crane MSC does not require Gulf Crane to name any member of the "Third Party Contractor Group" as an additional insured. *Id.* at 15. Because Yellowfin provides no opposition to this argument in its memorandum, the Court dismisses Yellowfin's claim to be named as an additional insured under the Gulf Crane MSC.
[23] As explained in note 19, *supra*, this is a correction of its argument that the six factors in *Davis*, 919 F.2d at 316, are satisfied.
[24] R. Doc. 38 at 5-10.

4

### III. LAW & ANALYSIS

#### A. Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Id*. A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact. *Id*. at 323. If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact. *Id*. at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1996). The substantive law identifies which facts are material. *Id.* Material facts are not genuinely disputed when a rational trier of fact could not find for the nonmoving party upon a review of the record taken as a whole. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Equal Emp't Opportunity Comm'n v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014). "[U]nsubstantiated assertions," "conclusory allegations," and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Anderson*, 477 U.S. at 249-50; *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994). In ruling on a summary judgment motion, a

court may not resolve credibility issues or weigh evidence. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). Furthermore, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014); *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001). Yet, a court only draws reasonable inferences in favor of the nonmovant "when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

After the movant demonstrates the absence of a genuine dispute, the nonmovant must articulate specific facts and point to supporting, competent evidence that may be presented in a form admissible at trial. *See Lynch Props., Inc. v. Potomac Ins. Co. of Ill.*, 140 F.3d 622, 625 (5th Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A) & (c)(2). Such facts must create more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. When the nonmovant will bear the burden of proof at trial on the dispositive issue, the moving party may simply point to insufficient admissible evidence to establish an essential element of the nonmovant's claim in order to satisfy its summary judgment burden. *See Celotex*, 477 U.S. at 322-25; Fed. R. Civ. P. 56(c)(B). Unless there is a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted. *See Little*, 37 F.3d at 1075-76.

B. Analysis

1. **The *PLT* Test**

Courts utilize the *PLT* test to determine when "adjacent state" law applies under OCSLA.[25]  Under the *PLT* test three requirements must be met for state law to apply as surrogate federal law under the OCSLA: (1) the controversy must arise on a situs covered by OCSLA (*i.e.*, the subsoil, seabed, or artificial structures permanently or temporarily attached thereto); (2) federal maritime law must not apply of its own force; and (3) the state law must not be inconsistent with federal law.  *See Tetra Techs., Inc. v. Continental Ins. Co.*, 814 F.3d 733, 738 (5th Cir. 2016).  Yellowfin does not contest the first or third requirement, but does contest the second – namely, whether federal maritime law applies of its own force to the indemnity provisions at issue.

2. **Nature of the Contract**

To determine whether maritime or Louisiana law applies to the indemnity provisions of the Gulf Crane MSC in this matter, the Court must examine both the Gulf Crane MSC and the specific work in question – both make up the contract at issue.  *See Doiron*, 879 F.3d at 569-70, 577 (examining the blanket master agreement together with the oral work order to determine whether to apply maritime or Louisiana law to the indemnity provisions in question); *see also In re Crescent Energy Servs, L.L.C.*, 896 F.3d 350, 352-53 (5th Cir. 2018) (examining both the blanket master agreement and the accepted bid as "together [they] formed [the] contract").[26]  Second, as Yellowfin noted and Gulf Crane agreed, the Fifth Circuit has simplified its test to

---

[25] *See supra* note 13 & 15 and accompanying text.
[26] There is therefore no separate analysis for the Gulf Crane MSC and the specific obligations at issue, as Yellowfin proposes.  *See* R. Doc. 33 at 9-10.

7

determine whether a contract is maritime or nonmaritime, so that a court now asks only two questions:

> First, is the contract one to provide services to facilitate the drilling or production of oil and gas on navigable waters? … Second, if the answer to the above question is "yes," does the contract provide or do the parties expect that a vessel will play a substantial role in the completion of the contract? If so, the contract is maritime in nature.

*Doiron*, 879 F.3d at 576. Only if these questions do not resolve the maritime-nonmaritime issue, such as if the scope of the contract or the extent to which the parties expect vessels to be involved in the work remain unclear, may the Court examine the *Davis* factors.[27] *Id.* at 577.

### a. *Was this a contract to provide services to facilitate the drilling or production of oil and gas on navigable waters?*

The *Doiron* test starts "with whether the activity concerns development of oil and gas offshore." *Crescent Energy*, 896 F.3d at 356. Yellowfin argues that "there is absolutely no language contained in the MSC to support any factual argument that the contract is one to facilitate the drilling or production of oil and gas on navigable waters,"[28] but Gulf Crane responds that the MSC is a "contract with a purpose of facilitating the drilling or production of oil or gas."[29]

Without citing to any evidence, Gulf Crane asserts that its work "inspecting, servicing, and repairing cranes on Fieldwood platforms involves activities inherent and vital to keeping the *oil producing* platforms operational" and that the "sole purpose of any Fieldwood operated platform in the Gulf of Mexico is to produce oil."[30] The Court cannot find record evidence to

---

[27] The six *Davis* factors are "1) what does the specific work order in effect at the time of injury provide? 2) what work did the crew assigned under the work order actually do? 3) was the crew assigned to work aboard a vessel in navigable waters? 4) to what extent did the work being done relate to the mission of that vessel? 5) what was the principal work of the injured worker? and 6) what work was the injured worker actually doing at the time of injury?" 919 F.2d at 316.
[28] R. Doc. 33 at 4.
[29] R. Doc. 38 at 7 (quotation marks omitted).
[30] *Id.* at 6 (emphasis added).

8

support the assertion that the cranes were related to Fieldwood's oil-producing activities (or even evidence that the platform's purpose was to produce oil).  Appendix I to the Gulf Crane MSC shows that Gulf Crane's work involved providing crane operators/riggers, crane service/repair/inspection, carpentry, and insulation for Fieldwood.[31]  Steven Knue, employed by Gulf Crane as its Fieldwood supervisor, attested that "Gulf Crane only services Fieldwood cranes permanently installed on fixed platforms under the Gulf Crane MSC."[32]  Carr and his supervisor Williams were assigned to service Fieldwood Area 8, which includes SP62.[33]  But this evidence falls short of demonstrating the platform's purpose or that the work of the cranes supported oil-producing activities.  In like fashion, Gulf Crane further asserts that "Fieldwood's exclusive business involves the extraction of crude oil under a contract with Apache," but does not provide any evidence to support this statement.[34]  While servicing cranes used for the production of oil on a fixed platform in the Gulf of Mexico would be sufficient to satisfy the first prong of the *Doiron* test, without evidence that the cranes involved here were related to Fieldwood's oil-producing activities (or even evidence that the platform's purpose was to produce oil), the Court cannot reach a positive conclusion on this point on a motion for summary judgment.  The Court does not find it necessary to do so, however, as the second prong is determinative of the issue, flunking the *Doiron* test.

    **b. *Does the contract provide or do the parties expect that a vessel will play a substantial role in the completion of the contract?***

Yellowfin argues that the second prong of the *Doiron* test is satisfied because the Gulf Crane MSC provides that Fieldwood has the "obligation to provide marine transportation for

---

[31] R. Doc. 26-4 at 15-16.
[32] R. Doc. 26-5 at 1.
[33] *See id.* at 1, 3, 8-10.
[34] R. Doc. 38 at 6 n.15.

9

equipment and workers" whenever the work to be performed "involves worksites located offshore," and so Gulf Crane and Fieldwood "clearly contemplated the use of vessels in order to fulfill the requirements of the MSC."[35]  A vessel plays a substantial role in the completion of a contract, though, when it is "being used for *more* than transporting between land and the wellsite." *Crescent Energy*, 896 F.3d at 361 (emphasis added).  The Fifth Circuit, for example, held that this prong was satisfied when a vessel was being used as a work platform, equipment such as a crane was kept on the vessel, and that the "most important component of the work … would be substantially controlled from the [vessel]."  *Id.*; *see also Quiroz v. C & G Welding, Inc.*, 2018 WL 6003554, at *4 (E.D. La. Nov. 15, 2018) (holding that the second prong of the *Doiron* test was satisfied when seventy percent of the plaintiff's work was completed on the vessel, the vessel housed workers, the vessel was used as a work platform, and essential equipment, such as a crane, was kept on the vessel); *Mays v. C-Dive LLC*, 2018 WL 3642005, at *3 (E.D. La. Aug. 1, 2018) (holding that this prong was satisfied when the agreement expressly provided for the use of a vessel to complete the work at issue, including for various tasks beyond transportation).  *But see Gulf Crane Servs.*, 2019 WL 1434436, at *3 (holding that the use of a vessel for transportation to and from a platform is insufficient to satisfy this prong).

In this summary-judgment record, the only evidence involving use of a vessel for the completion of either the Gulf Crane MSC or the specific work assignment at issue relates to transportation.  Indeed, the Kilgore MTCA, through which Yellowfin operated its vessel for

---

[35] R. Doc. 33 at 4-5 (citing R. Doc. 26-4 at 2).  Yellowfin also argues that the Gulf Crane MSC states that such maritime transportation "is a maritime activity and shall be subject to General Maritime Law," and so the parties contemplated that maritime law would apply to "instances in which Gulf Crane personnel were transported by vessel while working for Fieldwood."  *Id.*  However, "[t]he presence of a choice of law provision choosing maritime law does not decide this issue, as case after case holds that the parties' contractual choice of law does not override congressional intent as expressed in the Outer Continental Shelf Lands Act (OCSLA)."  *Gulf Crane Servs., Inc. v. Blue Fin Servs., LLC*, 2019 WL 1434436, at *3 n.1 (S.D. Tex. Apr. 1, 2019) (citing *In re Deepwater Horizon*, 745 F.3d 157, 165 n.7 (5th Cir. 2014); *Alleman v. Omni Energy Servs. Corp.*, 580 F.3d 280, 283 n.2 (5th Cir. 2009)).

10

Fieldwood, expressly provides that Fieldwood "agrees to restrict the use of each vessel *solely to the lawful movement* of its supplies, equipment, … and other materials and personnel incidental to its operations."[36]  This falls far short of the "substantial role" for the vessel required to find the contract to be maritime in nature.  Accordingly, the Court finds that the contract does not provide for, and the parties did not expect, a vessel to play a substantial role in the completion of the contract, and that therefore, the contract is nonmaritime and Louisiana law controls.

### 3. The LOIA's Applicability

Yellowfin argues that even if the Court determines Louisiana law applies, Gulf Crane has provided no evidence showing that the LOIA applies.[37]  It explains that under Fifth Circuit precedent, the Court must determine the applicability of the LOIA under a two-step process:

> First, there must be an agreement that "pertains to" an oil, gas or water well.  If the contract does not pertain to a well, the inquiry ends.  Only if we determine that the contract has the required nexus to a well may we proceed to the second step of the process, examination of the contract's involvement with "operations related to the exploration, development, production, or transportation of oil, gas or water."

*Transcontinental Gas Pipe Line Corp. v. Transp. Ins. Co.*, 953 F.2d 985, 991 (5th Cir. 1992) (quoting La. R.S. 9:2780(C)).  Yellowfin argues that Gulf Crane has not provided evidence to satisfy either prong.[38]  It maintains that the Court must engage in a "fact intensive case by case analysis" involving consideration of "at least ten factors" to determine whether the contract "pertains to a well."[39]  Gulf Crane counters that it has provided sufficient evidence to satisfy the *Transcontinental Gas* two-step test, but that regardless, *Doiron* simplified the determination of the LOIA's applicability.[40]

---

[36] R. Doc. 26-7 at 4 (emphasis added).
[37] R. Doc. 33 at 5.
[38] *Id*. at 6.
[39] *Id.*
[40] R. Doc. 38 at 9.

11

Neither party is entirely correct. First, Gulf Crane misreads *Doiron*. *Doiron* only simplified the *Davis* multi-factor test to determine whether a contract is maritime or nonmaritime in nature, as prelude to determining whether maritime or state law applies under OCSLA. *See Doiron*, 879 F.3d at 571, 576; *see also Crescent Energy*, 896 F.3d at 359 ("We en banc eliminated most of the [*Davis*] factors, narrowing our focus, but we did not fundamentally change the task."). The LOIA question may have appeared simplified in *Dorion* because there the parties did not dispute that the LOIA applied if the court found the contract was nonmaritime. Here, Yellowfin does.

Yellowfin, meanwhile, misreads *Transcontinental Gas*. While the Court must find that its two-step test is satisfied, it does not need to engage in a lengthy ten-factor inquiry in analyzing the first step. This inquiry is used when a contract involving natural gas, rather than oil, allegedly pertains to a well, as opposed to a pipeline. *See Transcontinental Gas*, 953 F.2d at 994-95. The Fifth Circuit specifically explained that determining whether a contract pertains to a gas well or a gas pipeline is a more difficult inquiry than whether a contract pertains to an oil well because of the processes surrounding gas production and transportation, and so it provided these factors for guidance. *Id.* at 994 ("Unlike oil, … [o]nce natural gas is severed, its flow is continuous …. [I]n recognition of the fact that in each situation there should be a reasonably determinable point at which gas can no longer be identified with a particular well, … we are able to discern factors relevant to the process of determining that point."). Gulf Crane has only asserted that the Fieldwood platforms in question were used for oil, not gas, production. Accordingly, this multi-factor test to ascertain whether operations pertain to a gas well (as opposed to a pipeline) is unnecessary.

Still, Yellowfin is correct that Gulf Crane has not provided any evidence that the contract

12

in question pertains to an oil well or wells.[41] Gulf Crane's assertions to this effect are conclusory and unsupported by citations to evidence in the summary-judgment record. It may be that, at trial, Gulf Crane can easily prove this first step of the *Transcontinental Gas* test, but it has not carried its burden on summary judgment. It is unnecessary, then, for this Court to reach the question whether Gulf Crane has satisfied the second step of the *Transcontinetal Gas* test, although, for similar reasons, the Court doubts that Gulf Crane has done so on this summary-judgment record but observes that it should not be difficult for it to do so at trial.

### IV. CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Gulf Crane's motion for summary judgment (R. Doc. 26) is GRANTED IN PART and DENIED IN PART.

New Orleans, Louisiana, this 30th day of October, 2019.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE

---

[41] Yellowfin implies that Gulf Crane must demonstrate the contract pertains to a singular well, but this is inaccurate. *See* R. Doc. 33-5 ("[Gulf Crane] has not presented any facts which establish or help establish whether the lines connected to [SP62] transport oil or gas from a single well or single production platform."). The contract may pertain to "a well ***or wells***" to satisfy this test. *Verdine v. Enesco Offshore Co.*, 255 F.3d 246, 252 (5th Cir. 2001) (emphasis added).